943 So.2d 906 (2006)
George ANTOURY, Appellant,
v.
STATE of Florida, Appellee.
No. 5D05-2880.
District Court of Appeal of Florida, Fifth District.
December 1, 2006.
*907 F. Wesley Blankner, Jr., of Jaeger & Blankner, Orlando, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Rebecca Rock McGuigan, Assistant Attorney General, Daytona Beach, for Appellee.
PLEUS, C.J.
George Antoury appeals his convictions for attempted sexual battery and battery. He raises several issues. First, he argues that the trial court erred by excluding evidence regarding the victim's sexual history and mental illness. Second, he claims the trial court erred by restricting his attorney's cross-examination of the investigating officer regarding his interview with Antoury. Third, he argues that the trial court erred by rebuking his attorney in front of the jury.
Regarding Antoury's first argument, we hold that the trial court did not abuse its discretion in excluding evidence of the victim's history of sexual abuse and mental illness as Antoury failed to demonstrate the relevance of that evidence. However, we agree with Antoury's second argument that the trial court erred by depriving him of a full and fair cross-examination of the investigating officer. As this error was not harmless, we must reverse and remand for a new trial. Consequently, we need not address Antoury's third issue.
Antoury was charged with sexual battery, false imprisonment and attempted sexual battery arising from a 2001 incident in which he offered a ride to a woman at a bus stop and allegedly sexually battered her against her will. As Antoury freely admitted having sexual contact with the victim, the main issue at trial was whether she consented.
At trial, the victim testified that she was waiting for the bus when she accepted a ride from Antoury. He turned down a side street and stopped at the end of it. He touched her breast and then tried to force her head down on to his exposed penis. She asked him to stop, tried to pull away and tried to open the car door. Antoury then climbed on top of her, pulled her pants down and rubbed his penis against her vaginal area. At that point, a car drove down the street. Antoury jumped off the victim and she managed to get out of the car and run away. The victim testified she never consented to these actions. On cross-examination, the victim admitted that she gave a false name to the police. She also admitted that she had been in counseling since she was a child.
Orlando Police Detective Jeffrey Lamey testified that after speaking to the victim, he spoke to Antoury. Antoury agreed to come to the police station and speak further. Instead of introducing the videotape or transcript of Antoury's interview with Lamey, the prosecutor boiled down Antoury's hour-long interview to less than two pages of carefully scripted questions, eliciting yes or no answers from Detective Lamey:
Q. When he was speaking with you, did he admit picking up [the victim]?
A. Yes, Ma'am, he did.
Q. Did he admit to pulling over to a side street off of Colonial?
A. Yes, Ma'am.

*908 Q. Did he  did he admit that he touched her breasts in some context?
A. Yes, Ma'am, he did.
Q. Did he admit that he climbed over to the passenger compartment of the car?
A. Yes, Ma'am.
Q. Did he tell you that he, for lack of a better term, ground up against her, meaning his body pressed up against her body?
A. Yes, Ma'am, he did.
Q. Did he initially deny ejaculating?
A. Yes, Ma'am, he did. Initially, he denied it; and then, through the course of the conversation, the interview, he admitted that he did.
Q. Did he seem concerned about the prospect of being arrested 
A. Yes.
Q.  for a crime?
A. Yes, he did.
Q. Did he ask you many times what crime it was, or was he going to be arrested, or what crime was she accusing him of?
A. Yes, he did.
Q. Did he have some explanation for the activity between the two of them, the touching of the breasts and things like that?
A. He told me everything was consensual.
When defense counsel attempted to cross-examine Detective Lamey by quoting from the transcript of Antoury's taped interview, the trial court, sua sponte, intervened and informed defense counsel that he could not use the transcript to cross-examine Detective Lamey unless it was admitted into evidence. Then, the court informed defense counsel that he could only use the transcript to refresh the witness's recollection. Defense counsel continued attempting to elicit Antoury's statement to police through Detective Lamey. Each time, the trial court sustained the State's objection.
In short, the trial court repeatedly limited defense counsel's ability to use the transcript to cross-examine Detective Lamey after the State had opened the door. Antoury argues persuasively that the State's carefully scripted version of his interview was incomplete and misleading without giving the jury the context of the entire interview.
Generally, a defendant's out-of-court, self-serving, exculpatory statements are inadmissible hearsay. Lott v. State, 695 So.2d 1239 (Fla.1997). However, when the State "opens the door" by eliciting testimony about part of the defendant's conversation with police, the defendant is entitled to cross-examine the witness about other relevant statements made during the conversation. Somerville v. State, 584 So.2d 200 (Fla. 1st DCA 1991); Guerrero v. State, 532 So.2d 75 (Fla. 3d DCA 1988). The reason for this rule is to ensure that the jury understands the entire context of the statements elicited by the State, Somerville, 584 So.2d at 201, and is not misled by exclusion of relevant sections of the conversation, Guerrero, 532 So.2d at 77.
The State fails to address the merits of this argument. Instead, it attacks the admissibility of the evidence in three ways. First, the State argues that its hearsay objections to questions seeking to elicit statements made by the victim were properly sustained because any testimony concerning what Antoury told Detective Lamey that the victim told him would have been double hearsay. Second, the State argues that the defense counsel improperly attempted to refresh Detective Lamey's recollection by quoting from the transcript. Third, the State argues that admission of *909 the transcript would have violated the best evidence rule because the videotape of the interview was the best evidence. All of these admissibility arguments, though accurate, miss the point that when the State opens the door, the defense can introduce otherwise inadmissible evidence to prevent the jury from being misled.
The State also argues that the error was harmless. The harmless error test places the burden on the State to prove beyond a reasonable doubt that there is no reasonable possibility that the error contributed to the conviction. State v. DiGuilio, 491 So.2d 1129, 1134 (Fla. 1986). The key issue in this case was whether the sexual contact between Antoury and the victim was consensual. Because of the lack of physical evidence or eyewitness testimony, this issue hinged on the credibility of Antoury and the victim. Each testified but the jury's verdict was mixed, clearing Antoury of false imprisonment and sexual battery, but finding him guilty of attempted sexual battery and battery. Under these circumstances, we cannot say beyond a reasonable doubt that the trial court's error in depriving Antoury of a full and fair cross-examination, leaving the jury with an incomplete and carefully State-crafted version of Antoury's interview with police, did not contribute to the verdict.
Accordingly, we reverse Antoury's convictions and remand for a new trial.
REVERSED AND REMANDED FOR NEW TRIAL.
SAWAYA and MONACO, JJ., concur.